UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

DAVID W. NATCHER,
Plaintiff

v.

ACCURIDE CORPORATION,
Defendant

Civil Action No. 1:16-cv-219-BJR

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment filed by Defendant Accuride Corporation ("Accuride"), seeking dismissal of Plaintiff David Natcher's negligence claims against it. Natcher, an employee of non-party Birkmire Trucking, was seriously injured at an Accuride manufacturing facility, as he and Accuride employee Donald Herrmann were loading a large piece of machinery onto Birkmire's flatbed trailer. Natcher filed a complaint against Accuride, alleging Accuride's negligence caused his injuries.

Accuride's Motion for Summary Judgment asserts that Accuride did not owe Natcher a duty of care, because Natcher assumed the risk of a known and obvious danger during the loading process, and because Natcher was an independent contractor. Accuride also argues that OSHA regulations do not impose a duty where none otherwise exists, and that even if it did owe Natcher a duty, its actions were not the proximate cause of Natcher's injuries.

Having reviewed the pleadings filed in support of and opposition to this motion, the Court finds and rules as follows.[1]

---

[1] Plaintiff's counsel is encouraged to review this Court's Standing Order for Civil Cases, Dkt. No. 5, § 2.F.(1), for page limits on dispositive motion briefing.

1

## II. FACTUAL BACKGROUND

On the morning of April 15, 2016, Plaintiff David Natcher reported to a facility owned and operated by Defendant Accuride. Compl., Dkt. No. 1, ¶ 6. Birkmire Trucking, LLC, Natcher's employer, had been hired to transport a piece of machinery known as a conveyor from Accuride's facility in Erie, Pennsylvania to Wisconsin for repairs. *Id.*, ¶ 7. The conveyor in question has been described as a heavy, awkward piece of machinery, weighing up to 12,000 pounds and measuring 21'x 3'x 6'. *See* Bill of Lading, Ex. M to Def.'s Concise Statement of Material Facts, Dkt. No. 31 ("DSMF"); Dep. of Donald Herrmann, Ex. B to DSMF, pp. 72-73 ("Herrmann Dep.").

After backing his truck into Accuride's loading bay, Natcher entered the facility to assist Accuride employee Donald Herrmann with loading the conveyor onto the trailer. Dep. of David Natcher, Ex. A to DSMF, pp. 97, 99-104 ("Natcher Dep."). The plan was for Herrmann to operate an overhead crane to lift the conveyor and place it on the flatbed of the Birkmire trailer parked in the loading bay. Together, Natcher and Herrmann attached chains hanging from the crane to four points on the conveyor, ensuring the load would be properly balanced when lifted. *Id.*; Herrmann Dep., pp. 53, 59-60, 68-69. Once the chains were attached, Natcher climbed onto the trailer bed to guide placement of the conveyor. Natcher Dep., pp. 123-124, 128; Herrmann Dep., pp. 54, 70. Herrmann, operating the crane, lifted the conveyor and placed it on top of wooden cribbing, which Natcher had laid on the bed of the trailer to prevent the conveyor from causing damage to the aluminum floor. Natcher Dep., pp. 117-18; 126-27; 132-33. After Natcher inspected the conveyor to make sure it was in the desired position, he unhooked the chains and placed them in a pile on top of the conveyor. *Id.*, p. 149. Natcher did not use any temporary bracing to secure or stabilize the conveyor before removing the chains. *Id.*, pp. 166-67. He then

directed Herrmann to lift the chains free of the conveyor, and moved over to the front, driver's side of the trailer bed, away from the conveyor. Natcher Dep., pp. 153; 156-57.

Using the crane, Herrmann began to lift the chains. As he did, the pile of chains slid off the conveyor. *Id*. Concerned about the chains dragging along the sides of the conveyor, Natcher stepped forward to push the chains clear of the conveyor as Herrmann continued to raise the chains. *Id*., pp. 161-62. For reasons none of the witnesses can say for sure, the conveyor then began to shake. *Id*., p. 163. Natcher shouted at Herrmann to stop lifting the chains and attempted unsuccessfully to stabilize the conveyor. *Id*. As the conveyor tipped towards Natcher, Natcher was pushed or jumped off the trailer, and as a result suffered an open fracture of the right distal tibia, an open fracture of the right distal fibular shaft, an open fracture of the right lateral malleolus, multiple hematomas, abrasions and contusions, and a number of other severe injuries. Compl., ¶ 23. Natcher and Herrmann did not see what caused the conveyor to shake, or why exactly it tipped over, although they believe a chain or hook snagged on the conveyor as the chains were being lifted. Mark Crispin, Accuride's Stores Coordinator, was present for part of the time during the loading operation, but was not closely supervising the activity. He noticed the chains moving up the conveyor, but he also does not know what caused the conveyor to tip over. *See* Dep. of Mark Crispin, Ex. C to DSMF ("Crispin Dep."), pp. 9, 36-38.

The Complaint asserts that Accuride is vicariously liable for the negligence of its employee, Donald Herrmann, for operating the crane in an unsafe manner, causing Natcher's injuries. Compl., ¶ 25. Natcher claims that Herrmann was negligent in, among other things, operating the crane in a manner that caused the conveyor to tip over, for failing to ascertain Natcher's location before lifting the chains, and for operating the crane without a spotter. *Id*. The Complaint also asserts that Accuride is directly liable for its own negligence for, among other

3

things, allowing its employee to operate the crane under unsafe conditions, and failing to train its employee in safe operation of the crane. *Id.*, ¶ 26.

### III. DISCUSSION

A. <u>Summary Judgment Standard</u>

Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir. 1990) (*citing Sorba v. Pennsylvania Drilling Co.*, 821 F.2d 200, 204 (3d Cir.1987), cert. denied, 484 U.S. 1019 (1988)).

B. <u>Whether Accuride Owed Natcher a Duty of Care</u>

To establish a claim of negligence, a plaintiff must demonstrate that "the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214, 221 (Pa. 2018), citation omitted. Accuride's Motion for Summary Judgment argues that Natcher cannot establish that it owed him a duty of care, for two primary reasons: (1) because Natcher assumed the risk of a known and obvious danger, thereby absolving

4

Accuride of responsibility for his safety; and (2) because Pennsylvania law does not recognize a landowner's duty of care to an independent contractor hired to perform a job. Each argument is addressed in turn.

    1. <u>Whether Natcher Assumed the Risk of a Known and Obvious Danger</u>

First, Accuride argues that it did not owe Natcher a duty of care because in the process of loading the conveyor, Natcher undertook a "known and obvious" risk, thus relieving Accuride of the general rule that "[p]ossessors of land owe a duty to protect invitees from foreseeable harm." *Carrender v. Fitterer*, 469 A.2d 120, 123–24 (Pa. 1983). Accuride relies on Pennsylvania law providing that a "possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Id*., *citing, inter alia,* Restatement (Second) of Torts §§ 328-343B (1965)*; Atkins v. Urban Redevelopment Auth. of Pittsburgh*, 414 A.2d 100, 104 (Pa. 1980) ("the law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by his invitee.").

The Court holds that it is a jury that must decide whether the danger of the conveyor becoming unstable and causing Natcher to fall off the trailer was "known and obvious" to Natcher. *See Carrender* at 124 ("the question of whether a danger was known or obvious is usually a question of fact for the jury" and should be decided by a court only "where reasonable minds could not differ as to the conclusion."). This conclusion is particularly true given that Pennsylvania courts have demonstrated a reluctance to apply the assumption of risk analysis to a plaintiff injured in the course of employment. *See, e.g., Staub v. Toy Factory, Inc*., 749 A.2d 522, 529-30 (Pa. Super. 2000) ("[I]n a negligence context, where an employee is required to

encounter a risk in order to perform his job, reasonable minds could disagree as to whether the employee deliberately and with awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced the injury. Thus the employee's conduct is better judged by its reasonableness, that is, by negligence principles. A trial court should not, therefore, decide the issue as one of duty or lack thereof; instead, the issue should go to the jury as one of comparative negligence.") (citations omitted).

Even if the assumption of risk doctrine could be applied in the employment context, its application as a matter of law would not be appropriate at this stage of the case. Pennsylvania law provides that "[f]or a danger to be known, it must not only be known to exist, but ... also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." *Id.*, 469 A.2d at 123–24, internal quotation omitted. For a plaintiff's knowledge of risk to absolve a defendant of a duty of care, it must be "*beyond question* that [the plaintiff] voluntarily and knowingly proceeded in the face of an obvious and dangerous condition." *Longwell v. Giordano*, 57 A.3d 163, 169 (Pa. Super. 2012) (emphasis added).

In this case, a jury could reasonably conclude that Natcher could not have "appreciated" the "probability and gravity of the threatened harm" that actually befell him. *Id*. Evidence demonstrates that he was not familiar with the conveyor in question before the day of the accident, and had not previously been involved in a loading operation using this particular overhead crane. Natcher Dep., pp. 76, 239-40. While he was an experienced transport truck driver, which experience included loading heavy items onto a truck bed, it is a matter of dispute whether he appreciated how unstable or heavy the conveyor actually was. *See* Natcher Dep., p. 48 ("Q. how about in terms of the unit's weight distribution? Was it top-heavy? Was it evenly distributed throughout? Was it weighted more to the front or the back? How would you describe

6

that? A. If I—I can't say for sure, because I didn't have it on the trailer long enough to know."). A jury could find, for example, that Natcher's decision to have the conveyor placed on an uneven surface (the wooden cribbing), and his decision not to secure the conveyor to the truck bed before removing the chains, were made not out of carelessness, but out of a misperception of the danger that an unsecured, unbalanced conveyor actually posed to him. Indeed, the record shows that as the conveyor began to shake, Natcher attempted to "hold it up and push it back in position,"—evidence that he critically underestimated its massive and unstable weight. *See* Crispin Dep., p. 38.

It is true that after Natcher removed the chains from the conveyor and directed Herrmann to lift them, he walked over to the front of the trailer bed, to get "out of the way of the hoist" because "[y]ou don't walk under suspended machinery," again indicating an awareness of some danger. Natcher Dep., p. 157. But Natcher was not injured because he was standing under suspended machinery. He was injured because the unstable conveyor pushed him—or caused him to jump—off the trailer bed. Natcher's acknowledgment of danger generally does not relieve Accuride of responsibility for the particular danger that befell him. *See Barillari v. Ski Shawnee, Inc.*, 986 F. Supp. 2d 555, 562 (M.D. Pa. 2013) ("It is not enough that the plaintiff was generally aware that the activity in which he was engaged had accompanying risks. Rather, the plaintiff must be aware of 'the particular danger' from which he is subsequently injured in order to voluntarily assume that risk as a matter of law.").

In addition, the record does not conclusively establish what caused the conveyor to shake and/or tip over, but a jury could reasonably find that the potential risks posed by loose chains being lifted by a crane—including that the chains might get snagged on and tip over cargo—were risks better known to Accuride and its employees than to Natcher, who the record shows

7

had limited or no experience working with this overhead crane.[2] Natcher Dep., pp. 239-40. The conveyor and the crane belonged to Accuride, and the record shows that Accuride regularly sent the conveyor out for repairs. Crispin Dep., pp. 17-19. It appears from the record that Accuride was thus in a better position to know the safest way to operate the crane to load the conveyor, and whether, for example, it was safer to have the chains placed on the cargo before lifting them, or first swing the chains sideways, away from the cargo, before lifting them. Under these circumstances, reasonable minds could differ as to whether Accuride should bear responsibility for ensuring better safety procedures for the loading process, which could have helped prevent Natcher's injuries.

2. <u>Whether Accuride Did Not Owe Natcher a Duty of Care Because He Was an Employee of an Independent Contractor</u>

Accuride also argues that it did not owe Natcher a duty of care because Natcher was an employee of an independent contractor. Under Pennsylvania law, "a party who hires an independent contractor is generally exempt from liability for injuries sustained by the contractor's employees." *Beil v. Telesis Const., Inc.*, 11 A.3d 456, 460 (Pa. 2011).

---

[2] Accuride claims that Natcher moved toward the conveyor to push the chains off because he was concerned the chains would drag along the side of the conveyor, and knew that could cause the conveyor to tip over. Natcher's deposition testimony on this precise issue is not as clear as Accuride attests and is not dispositive of the issue central to Accuride's no-duty defense:
"Q: Well, were you concerned that if they dragged up the side of the machine, they could tip the machine over?
A: I was – that was in the back of my mind, but that's – I was just trying to get them [the chains] away from the machine. . . .
Q: You were more worried about them maybe getting caught or –
A: Getting caught and flipping the machine –
Q: Sure.
A: - - off the trailer. "
Natcher Dep., p. 162. A jury could reasonably interpret this testimony (depending on Natcher's demeanor and tone) as Natcher merely finishing the sentence started by Accuride's attorney, acknowledging that the machine tipping over was a possibility, but not that he was thinking that at the time of the injury. More importantly, the testimony does not establish that Natcher appreciated "the probability and gravity" of the conveyor tipping over and pushing him off the trailer, which is the danger that actually befell him.

Accuride relies on an overly and insupportably broad interpretation of this rule. In fact, the rule provides merely that "a landowner who engages an independent contractor is not responsible for the acts or omissions *of such independent contractor or his employees.*" *Id*. at 466, emphasis added, citing *Pender v. Raggs*, 35 A. 1135 (Pa. 1896); *Hader v. Coplay Cement Mfg. Co.*, 189 A.2d 271 (Pa. 1963); Restatement (Second) of Torts § 409 ("[T]he employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants."). Stated another way, the landowner "is not *vicariously liable* for the negligence *of an independent contractor*." *Beil*, 11 A.3d at 466, emphases added. Natcher, however, is not claiming that Accuride is vicariously liable for his own actions or the actions of his employer, the independent contractor Birkmire Trucking. He is claiming Accuride is vicariously liable for the actions or omissions of its employee, Donald Herrmann, and directly liable for its own negligence. *See* Compl., ¶¶ 25, 26. The landowner/independent contractor rule has no relevance to this case.

C. <u>Whether OSHA Regulations Impose on Accuride a Duty of Care</u>

Accuride devotes a section of its Motion for Summary Judgment to arguing that OSHA regulations do not create a duty of care where none otherwise exists. Natcher does not dispute this, and the Complaint does not contain a claim that Accuride is somehow liable under OSHA regulations. What Natcher is claiming is that OSHA regulations are useful evidence of the proper standard of care, which Accuride has acknowledged. *See* Def.'s Rep. at 12 ("It is well-settled that, [] OSHA regulations and other industry standards may be relevant evidence of the standard of care."). It is unclear from Accuride's motion what ruling it is seeking from the Court, other than perhaps the exclusion of Plaintiff's expert testimony on OSHA regulations (which it does

9

not explicitly request). Without more, the Court declines to rule on this issue at this stage of the proceedings.

   D. <u>Whether Natcher Cannot Prove Causation as a Matter of Law</u>

Finally, Accuride argues that Natcher's claims should be dismissed because he will be unable to demonstrate that Herrmann or Accuride caused his injuries. This argument relies on the assertion that "none of the three individuals present when the accident occurred (Natcher, Herrmann, Crispin) can testify with any degree of certainty what actually caused the conveyor to tip." Mot. at 26. Accuride argues that summary judgment is appropriate because a "jury may not be permitted to reach its verdict on the basis of speculation or conjecture; there must be evidence upon which its conclusion may be logically based." *Id*. at 24, *quoting Cuthbert v. City of Philadelphia*, 209 A.2d 261, 264 (Pa. 1965).

Based on the evidence submitted to the Court, however, it would hardly be "speculation" or "conjecture" for a jury to conclude that the chains being pulled up the side of the conveyor are what caused it to tip over. Natcher saw chains sliding off the conveyor, and saw the chains being dragged along the conveyor's side as they were being lifted, at which point the conveyor began to shake, and then tip over. Natcher Dep., pp. 165-66. Crispin also witnessed the chains being lifted along the conveyor just before it tipped over. Crispin Dep., pp. 35, 38, 41, 63. While there may not be an eye witness as to the precise location and moment at which the chains snagged on the conveyor, a jury is permitted to proceed by logical, reasonable inference from the substantial quantum of circumstantial evidence, which plainly exists here.

Furthermore, even if a jury could not reasonably conclude that the lifting chains caused the conveyor to tip over and Natcher to fall or jump off the truck, Natcher's claims are broadly stated enough that a jury might still find that Accuride is liable for his injuries. For example,

10

Natcher asserts that Accuride is vicariously liable for Herrmann "operating and/or lifting the crane when he knew Plaintiff was in the vicinity of the crane and the piece of equipment that had been loaded," and "operating and/or lifting the crane prior to sounding an alarm, horn, or other warning device to alert Plaintiff that the crane was about to be in operation." Compl. ¶ 25.g. & h. Natcher also alleges that Accuride is directly liable for its own actions and omissions, some of which do not require a jury to find that the chains snagging on the conveyor are what caused it to tip, including that Accuride is liable for "failing to provide a spotter, supervisor, or other individual to assist the crane operator in the operation of the crane to ensure that no persons were within the area of the operation of the crane." Compl. ¶ 26.i. Accuride's request for a ruling that as a matter of law Natcher will be unable to prove causation is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the Motion for Summary Judgment filed by Defendant Accuride.

Dated this 26th day of November, 2018.

Barbara Jacobs Rothstein
U.S. District Court Judge